UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-4745 (JFB) (SMG)

———————

TIBOR SPIEGEL,

Plaintiff,

VERSUS

MARIA ESPOSITO AND STATEN ISLAND COMMUNITY TELEVISION INC.,

Defendants.

———————

MEMORANDUM AND ORDER
October 16, 2006

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Tibor Spiegel brings this action against defendants Maria Esposito and Staten Island Community Television, Inc. ("CTV") (collectively referred to as "defendants") alleging violations of the New York State Executive Law § 290, *et seq.*, Chapter I, Title 8 of the Administrative Code of the City of New York, § 8-107(1)(a), the Right to Free Speech under the First Amendment, 1 U.S.C.A. § 1 and 42 U.S.C.A. § 1983, and retaliation, intentional infliction of emotional distress, breach of contract, tortious interference, and defamation. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) for a motion to dismiss plaintiff's eighth cause of action alleging a violation of plaintiff's First Amendment freedom of speech rights under § 1983. For the reasons set forth below, defendants' motion is denied.

I. BACKGROUND

A. FACTS

The following facts are derived from the amended complaint and taken as true for the purposes of this motion to dismiss.

Defendant CTV is a not-for-profit corporation formed pursuant to the laws of the State of New York that provides public access television service to the residents of Staten Island through its television programming on four Time Warner Cable channels on Staten Island. (Am. Compl. ¶¶ 4-5.) CTV is funded

through a Community Access Organization Grant Agreement with Time Warner NY Cable LLC ("Time Warner") and Staten Island Cable LLC ("Staten Island"). (*Id.* ¶ 15; Def.'s Mem. at 2.) Defendant Maria Esposito, a resident of the County of Richmond, New York, is the president of CTV, having been appointed by the Staten Island Borough President. (*Id.* ¶ 7.) Plaintiff began working at CTV on July 28, 2000, as the interim Executive Director. (*Id.* ¶ 14.) Plaintiff was hired by the Board of Directors immediately after the previous Executive Director was fired. (*Id.*) Shortly thereafter, on September 9, 2000, plaintiff was appointed by the Board of CTV as the CEO and Executive Director. (*Id.*)

According to the amended complaint, starting on or around June 29, 2004, CTV's programming output became regulated by defendant Esposito in violation of CTV's grant agreement with TWC Partners d/b/a Staten Island Cable (hereinafter "Staten Island Cable") and Time Warner NY Cable, Inc. ("Time Warner"), in violation of the First Amendment right to freedom of speech. (*Id.* ¶ 15.) Plaintiff alleges that defendant Esposito questioned and ordered certain types of programming that she found derogatory or offensive to be either pushed into a "dead" slot, or altogether pulled off the cablecasting schedule. (*Id.* ¶ 16.) It is also alleged that Esposito, instead of complying with CTV's "first come, first serve" policy for programming, ordered programming that was allegedly more favorable to her friends and mentors, to be played more frequently and in more favorable time slots. (*Id.*)

According to the complaint, Esposito also directed specific types of programming to be produced and crewed by CTV staff, on CTV time, contrary to the provisions of the franchise agreement, CTV's by-laws, and Borough President James P. Molinaro's 2002 directive that Board members were not to produce programming for CTV. (*Id.* ¶ 17.) This was also allegedly in direct violation of CTV's Producer and Staff Policies Manual, which stated that staff were not to be involved with any production on CTV time, as it would constitute interference with freedom of speech, and could be perceived as taking sides on a particular issue or cause. CTV staff and its Board of Directors are precluded from exercising any form of censorship of volunteer producer submissions. The volunteer producers are solely responsible for their submitted shows, and are required to have signed Statements of Compliance on record. (*Id.* ¶ 17.)

Plaintiff alleges that Esposito usurped the plaintiff's authority as CEO and Executive Director during her entire term of office, and thwarted plaintiff's efforts to improve efficiency within CTV. (*Id.* ¶ 18.) Plaintiff informed Staten Island Cable and Time Warner on several occasions through oral and written communications of the CTV Board of Directors' and Esposito's actions. (*Id.* ¶ 21.) According to the complaint, Staten Island Cable and Time Warner failed to intercede, investigate or take action upon warnings by the plaintiff of the CTV Board of Directors' and Esposito's wrongful conduct. (*Id.* ¶ 22.)

The complaint also alleges that, when plaintiff complained about the violations of the "first come, first serve" policy, he was terminated in retaliation for such speech. (*Id.* ¶ 61.)

B. PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on October 10, 2007. On January 23, 2006, this case was re-assigned to this Court. Plaintiff filed an amended complaint on March 10, 2006. Thereafter, defendants filed a motion to dismiss the eighth cause of

2

action in plaintiff's first amended complaint. Oral argument was held on October 11, 2006.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises*, — F.3d —, 2006 WL 1314684, at *2 (2d Cir. May 15, 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 106 (2d Cir. 2005), *cert granted*, 2006 U.S. LEXIS 4911 (U.S. June 26, 2006) (No. 05-1126).

## III. DISCUSSION

Defendants make two arguments with respect to plaintiff's First Amendment claim. First, defendants argue that plaintiff cannot establish government action. Second, defendants argue that plaintiff lacks standing to assert his claim. The Court addresses each of these arguments in turn, below.

### A. STATE ACTION REQUIREMENT

Plaintiff alleges that "defendants prevented him from exercising his First Amendment rights by directing him to refrain from broadcasting certain producers' programs in favor of programs of producers' who were friends and political affiliates of defendants." (Amend. Compl. ¶ 61.) Plaintiff further alleges that "[w]hen the plaintiff expressed his desire to achieve the defendants' objective to permit broadcast of programming on a first come, first serve basis, the defendants' moved to punish the plaintiff by terminating his employment." (*Id.*)

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Defendants argue that plaintiff does not allege facts that establish defendants acted under color of state law.

In *Brentwood Academy v. Tennessee School Athletic Assoc.*, the Supreme Court stated:

> What is fairly attributable [as state action] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government

521 U.S. 288, 295 (2001). The Court listed a "host of facts that can bear on the fairness of such an attribution [of state action]" and stated that "[a]dmist such variety [,]. . . examples from our cases are unequivocal in showing that the character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies." *Id*. (citing *Lebron v.*

3

*Nat'l Railroad Passenger Corp.*, 513 U.S. 374 (1995)).

Another judge in this district recently addressed the issue of whether this exact defendant, Staten Island Community Television, can be a state actor. *See Potenza v. Molinaro,* No. 03-CV-5534, 2005 U.S. Dist. LEXIS 4152 (E.D.N.Y. Sept. 27, 2005) (report and recommendation adopted in part and rejected in part by, 2006 U.S. Dist. LEXIS 19663 (E.D.N.Y. March 31, 2006)). In *Potenza*, Magistrate Judge Pollak held, in a thorough and well-reasoned opinion which Judge Amon adopted in relevant part, that at the motion to dismiss stage, the court could not conclude as a matter of law that, given CTV's role as the "oversight body for the public access channels" and the Borough President's involvement in CTV's activities, CTV is not a state actor. *Id.* at *34-35.

This Court agrees with the sound analysis in that case. Plaintiff has alleged that CTV is engaged in a public function - "to provide public access to cable television broadcasting." (Am. Compl. ¶ 5.) Further, plaintiff has alleged that the president of CTV is appointed by the President of the Borough of Staten Island (hereinafter "Borough President"). (*Id.* ¶ 7.) In addition, CTV's by-laws, referenced in the Complaint, and thus, properly considered by the Court,[1] state that directors are appointed by the Borough President for three-year terms.[2] Thus, for

---

[1] On a motion to dismiss, the Court may consider documents that are referred to in, and integral to, the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that for the purposes of a motion to dismiss, a complaint is considered to include documents referred to therein); *see also Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) ("Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is 'integral' to the complaint, and we consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle to it relief."); *Merkent v. SI Bank & Trust Spring 2004 Severance Benefit Plan*, No. 05-CV-2449 (JFB), 2006 WL 898086, at *1 n.1 (E.D.N.Y. Apr. 5, 2006) (considering provisions of severance plan that was referenced in complaint as part of motion to dismiss).

[2] At oral argument, counsel for defendants argued that because the Borough President is not empowered under the by-laws with the ability to *remove* directors, the Borough President's power to appoint is not tantamount to state action. The Court finds this reasoning unavailing. First, defendants did not point to, nor has the Court found, a single case that holds, without the power to remove directors, there can be no state action. To the contrary, courts have examined whether the government retains the power to appoint a majority of the directors in a corporation, but do not indicate that lack of removal power undermines this consideration. *See Lebron,* 513 U.S. at 400 ("[W]here, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment."); *accord Hack v. President & Fellows of Yale College*, 237 F.3d 81, 84 (2d Cir. 2000) (listing the three-prong standard used to determine whether a corporate entity qualifies as a state actor, the third of which addresses the government's appointment power of a majority of the directors). Further, it would be counterintuitive to find that lack of removal power automatically negates the significance of appointment power where, as here, the Borough President appoints the directors, and it is those directors, who were appointed by the Borough President, who have the power to remove. In addition, the by-laws state that directors serve only for three-year terms. Given these allegations, plaintiff may be able to prove that the Borough President exercises significant influence over the decisions of the members of the board of directors.

purposes of this motion to dismiss, the Court cannot conclude, given the allegations of CTV's public function and the alleged involvement by the Borough President in the activities of CTV, that plaintiff will not be able to establish sufficient factual information to demonstrate state action.

B. FIRST AMENDMENT STANDING

Defendants argue that plaintiff does not have standing to pursue his First Amendment claim because plaintiff was not personally injured by the programming decisions and, further, that plaintiff does not have standing to assert the legal claims of the third-party producers whose programs were not aired. (Def.'s Mem. at 5.) Defendants also asserted at oral argument that plaintiff's First Amendment claim was not raised under § 1983. Defendants, however, misconstrue plaintiff's complaint.

As a threshold matter, the first paragraph of the complaint states that the action arises under, in part, "the Right to Free Speech under the First Amendment, 1 USCA § 1 and 42 USCA. § 1983 asserting claims for violation of the foregoing statutes and retaliation for complaining thereof against the defendants." (Am. Compl. ¶ 1.) Plaintiff's eighth cause of action then incorporates paragraph one of the complaint and states that, "[w]hen the plaintiff expressed his desire to achieve the defendants' objective to permit broadcast of programming on a first come, first serve basis, the defendants' moved to punish the plaintiff by terminating his employment." (*Id.* ¶ 1.) Accordingly, despite defendants' argument to the contrary, the Court finds that plaintiff has pled his First Amendment claim under 42 U.S.C. § 1983.

Similarly, defendants' argument, that plaintiff was not injured and cannot assert third-party standing on behalf of producers, is misplaced. Because plaintiff is alleging a violation of *his* First Amendment rights under § 1983, plaintiff is not relying on third-party standing. Plaintiff's alleged termination constitutes an injury to him and, plaintiff argues that it was his own speech – speaking out with respect to the failure to follow the "first come, first served" policy – that led to his termination. Thus, the Court finds, for purposes of this motion to dismiss, that plaintiff has standing to pursue his First Amendment retaliation claim.

Finally, plaintiff has adequately pled the elements of a First Amendment retaliation claim. As the Second Circuit recently announced, "to establish a First Amendment retaliation claim, [a] plaintiff[] must prove that: (1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Village of Mamaroneck*, – F.3d – , 2006 WL 2734318 (2d Cir. Sept. 26, 2006). Here, plaintiff alleges that he spoke out regarding defendants' failure to follow the first come, first serve policy – a matter which plaintiff argues is of public concern. Plaintiff also alleges that he suffered an adverse employment action – namely, his termination. Finally, plaintiff alleges that his speech was the motivating factor for his termination. Accordingly, assuming the allegations in the complaint are true for purposes of this motion to dismiss, the Court finds that plaintiff has adequately pled his First Amendment claim. The Court is unable to conclude at this juncture, given the allegations, that plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

### III. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss plaintiff's eighth cause of action is DENIED. The parties are directed to proceed with discovery pursuant to Magistrate Judge Steven M. Gold's individual rules, forthwith.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 16, 2006
Central Islip, NY

\* \* \*

Plaintiff is represented by Richard Rinaldo, Esq, Rinaldo and Rinaldo, 405 Westfield Avenue, Elizabeth, New Jersey 07208 and Jonathan B. Behrins, Esq., Behrins & Behrins, P.C., One Edgewater Plaza, Staten Island, New York 10305. Defendants are represented by LeRoy J. Watkins, Jr., Esq., Jackson Lewis LLP, 59 Maiden Lane, New York, New York 10038.